Julie A. BUCHANAN, Petitioner,

v.

DEPARTMENT OF ENERGY,
Respondent.

No. 01–3018.

United States Court of Appeals,
Federal Circuit.

April 9, 2001.

**1334**

Julie A. Buchanan, of Portland, OR, pro se.

Lawrence N. Minch, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC. With him on the brief were David M. Cohen, Director; James M. Kinsella, Deputy Director; and Franklin E. White, Jr., Attorney.

Before LOURIE, Circuit Judge, PLAGER, Senior Circuit Judge, and DYK, Circuit Judge.

DYK, Circuit Judge.

Julie A. Buchanan ("petitioner") seeks review of the final decision of the Merit Systems Protection Board ("Board" or "MSPB") dismissing for lack of jurisdiction petitioner's appeal of her removal from her government position for violating a last-chance settlement agreement. *Buchanan v. Dep't of Energy*, No. SE–0752–99–0368–I–1, SE–0752–98–0217–C–2 (M.S.P.B. Aug. 16, 2000). Because petitioner has not demonstrated that the Board erred in dismissing her appeal, we affirm.

## BACKGROUND

Petitioner had a long history of absences from her positions at the Bonneville Power Administration ("agency" or "BPA"), an agency within the Department of Energy. Initially, the agency proposed to remove her for unavailability for full-time employment, relying on her repeated absences from work, allegedly for various health reasons, in the period from June 1995 to January 1998. During the period of these repeated absences, petitioner's supervisor, Barry Hirsch, wrote a memorandum to petitioner on February 27, 1997, expressing his concerns about her availability for work, and stating that she had been unavailable for work approximately thirty-five percent of the time in the preceding eight months. After the February 27, 1997, memorandum, petitioner was absent from work approximately seventy-two percent of the time between March 1, 1997, and April 24, 1997.

After meeting with petitioner and an American Federation of Government Employees (AFGE) representative, Mr. Hirsch wrote another memorandum on April 24, 1997, providing for a six-month trial period during which petitioner would be given less demanding work assignments and permitted to work from home when necessary. At the end of the trial period, the agency evaluated her time and attendance records and found that, based on petitioner's own timesheets, petitioner was absent from work approximately thirty-five percent of the time during the trial period. Based on official timesheets, petitioner's actual attendance at the office was close to zero.

During the period between the end of the trial period, October 24, 1997, and January 8, 1998, petitioner apparently came into the office on only a few, if any, occasions. On January 27, 1998, the agency evaluated the nature and seriousness of her absences, and proposed removing petitioner from her position as a Public Affairs (Public Involvement) Specialist on the grounds of her unavailability for full-time employment on a regular basis and because of the "great degree of interaction

demanded of a public involvement job" such as the one she had.

In a letter dated May 5, 1998, the agency approved the proposed removal, noting that review of the attendance records since the proposed removal letter did not support petitioner's claim that she was currently working full-time in her position. The agency determined that her "presence in the office to the maximum degree possible was essential" and that the work of her position must be done in the office. The agency discussed the importance of her attending both scheduled and unscheduled meetings, and noted that even though she was not always on leave, she "continued to be unavailable for work at the office."

Petitioner appealed her removal to the Board. During the pendency of the appeal, the parties reached a settlement, the terms of which are set forth in the last-chance settlement agreement of January 27, 1999, which is involved here. The last-chance agreement was approved by an administrative judge of the Board on February 10, 1999. Under the last-chance agreement, petitioner accepted a Public Utilities Specialist position as a GS–11, but retained her pay as a GS–12, Step 5. The agreement set forth a number of restrictions on her employment due to concerns about her repeated absences from the workplace. Paragraph 6 of the agreement provided that:

> [F]ailure by the appellant to follow the work attendance and leave procedures described below will be grounds for removal. *Failure is defined as any instance of noncompliance with the provisions of any one of paragraphs 6a–6f.* Failure does not require cumulative noncompliance with more than one of these paragraphs. BPA agrees to notify appellant when it determines she has failed any provision of the work attendance and leave procedures below. These no-

tice provisions are for the purpose of giving the appellant an opportunity to submit evidence to BPA management that she did not, in fact, fail any of the work attendance and leave procedures.

(emphasis added). Subparagraph 6a further stated: "Any non-emergency absence that is not pre-scheduled or pre-approved will result in AWOL. No AWOL will be approved during the term of this agreement." Subparagraph 6e further provided that:

> Appellant shall work the same full 8 hour tour of duty each day beginning between 7:45 a.m.—8:15 a.m., with a 45 minute lunch, leaving between 4:30 p.m.—5:00 p.m. *Any variations in this schedule* shall conform to BPA core hour requirements and *shall be approved in advance by appellant's supervisor. Any failure to be on duty during scheduled duty hours, except as authorized by appellant's supervisor or as specified under subparagraphs 6a and 6b, will result in the appellant being AWOL.*

(emphasis added).

Paragraph 9 provided, in part, that: "Appellant . . . waives her right to appeal her termination should she violate the agreement. Appellant reserves the right to appeal to the MSPB the issue whether she actually failed any of the terms of this agreement." Paragraph 16 provided that: "Except for the specific requirements of this agreement, appellant will be treated like any other BPA employee." The agreement was to be effective for a period of one year following Ms. Buchanan's return to work. Petitioner returned to work on February 16, 1999.

On May 25, 1999, petitioner's new supervisor, Joseph Flores, wrote a memorandum to petitioner concerning her recurring work attendance problems. Mr. Flores specifically outlined the events of May 18, 1999, when petitioner called in late, but

then still arrived over an hour after her approved arrival time without permission. The letter stated that although this conduct could have been considered a breach of the agreement, Mr. Flores allowed petitioner to take leave in this one instance. Mr. Flores however warned that any such future conduct would result in her being considered AWOL. The letter also outlined petitioner's recent habit of arriving at work after the agreed-upon starting time. The starting time was subsequently changed to a later time, but petitioner still on at least three occasions after the new arrival time failed to arrive at work within the 30 minute grace period without approval. Mr. Flores informed petitioner that he also could have determined her to be AWOL for these instances, which would be grounds of removal, but instead allowed her to work late instead. Mr. Flores then notified petitioner that unless she was on pre-approved annual leave, pre-approved sick leave, or on emergency leave, any future deviation from her work schedule would be treated as AWOL. He further notified her that if he determined her to be AWOL, he would recommend that she be removed from her position. On May 25, 1999, petitioner acknowledged that she had read and understood this warning letter.

This brings us to the day in question. On August 9, 1999, petitioner was admittedly away from her work station and not engaged in performing her assigned tasks for a considerable portion of the day without any prior approval of her supervisor. After obtaining additional information about petitioner's absence from her work station and her failure to be engaged in performing work for a significant portion of the workday on August 9, 1999, Mr. Flores met with petitioner on August 18, 1999, to inquire about her work hours and tasks on August 9. As requested, petitioner provided a written account on August 18, 1999. In this written account, petition-

er listed her alleged activities for the entire day. For the time slot from 10:00 to 11:30 a.m. she stated that she met with a union representative, Ann Juarez, regarding "orientation for stewardship responsibilities," and that from 1:30 to 2:35 p.m. she talked with Ms. Juarez regarding "AEP status, rate case petition, and upcoming training/orientation."

In response to her written account, the agency interviewed several persons in order to verify that petitioner's statements were accurate, and in order to determine whether petitioner was on duty on August 9, 1999. Ms. Juarez stated that she did not meet with petitioner during the hours that petitioner had claimed. First, Ms. Juarez denied meeting with petitioner at all during the morning. Second, Ms. Juarez did not recall a meeting with petitioner in the afternoon, and recalled that she attended a 2:00 p.m. meeting which petitioner did not attend; therefore she could not have met with petitioner from 1:30 to 2:35 p.m. as petitioner alleged, although they did apparently meet at some time that afternoon. Other co-workers and supervisors stated that petitioner left a note on her cubicle stating that she was in training until 1:00 p.m. and was not seen at her work station or elsewhere performing her assigned tasks, for most, if not all of the day. Another employee stated that, during the time period that petitioner alleged that she ate lunch at her desk while working, petitioner was not in fact at her desk, and that a pile of papers remained on her chair during and after this period. The employee further noted that when the employee returned from lunch at 1:30 p.m., petitioner was not at her desk and the pile of papers was still on her chair.

On August 24, 1999, in light of the statements by her co-workers that petitioner was not seen at her work station, or elsewhere performing her assigned tasks, for a

significant portion of the day, and the inconsistencies between her written account and the testimony, Mr. Flores notified petitioner in writing that she had breached the last-chance agreement for failing to be on duty for a significant portion of the day on August 9, 1999. The notice outlined her previous warnings, as well as the basis for his determination that she failed to be on duty from 10:00 to 11:30 a.m.; from 11:30 a.m. to 1:30 p.m.; and for a significant portion of the afternoon. Pursuant to the last-chance agreement, the notice also gave petitioner an opportunity to submit evidence that she did not breach the agreement.

Petitioner provided a written response on August 24, 1999, and a supplemental response on August 25, 1999. In those responses petitioner changed her story concerning the time period 10:00 to 11:30 a.m. She no longer claimed that she attended a meeting with Ms. Juarez. Instead, petitioner stated that she had planned to attend an orientation meeting but that it had been cancelled, and then went to Ms. Juarez's office, and found that Ms. Juarez was not there. She did not offer any other explanation of what she did during this time period, nor did she address the many discrepancies concerning her lunch break or the afternoon meeting with Ms. Juarez. On August 31, 1999, the agency, in a letter by Mr. Flores's superior, Allen Burns, removed Ms. Buchanan for failure to comply with the conditions set forth in paragraph 6 of the last-chance agreement.

Petitioner then filed: (1) a petition to enforce the last-chance agreement; and (2) an appeal from the agency's removal action in which she alleged violation of the last-chance agreement. After receiving submissions from the parties on the issue of the Board's jurisdiction, the administrative judge issued an initial decision on December 27, 1999, denying her petition to enforce the last-chance agreement. *Buchanan v. Dep't of Energy*, No. SE–0752–98–0217–C–2 (M.S.P.B. Dec. 27, 1999). On December 28, 1999, the administrative judge issued an initial decision dismissing petitioner's appeal without a hearing. *Buchanan v. Dep't of Energy*, No. SE–0752–99–0368–I–1 (M.S.P.B. Dec. 28, 1999). In the initial decisions, the administrative judge outlined the uncontested facts and allegations, and determined that, at a minimum, petitioner's meeting with Ms. Juarez without permission on the afternoon of August 9, 1999, constituted a failure to be on duty and thus absence without leave (AWOL) as defined by the agreement, a violation of paragraph 6e of the last-chance agreement. The administrative judge noted that even if all of the facts alleged by petitioner were true, she failed to obtain permission for the meeting, thereby violating the last-chance agreement which expressly required permission for any absences from duty. The administrative judge stated that petitioner "has failed to allege facts which, if proven, would show that she did not violate the terms of the last chance agreement, or that the agency acted in bad faith in invoking the provision allowing her removal for such a violation." The administrative judge further held that because the petitioner waived her right to appeal from the removal action, the Board was without jurisdiction to decide the merits of the removal action itself, and was limited to a determination of whether she violated the last-chance agreement.

Petitioner petitioned for review to the full Board. Because the two Board members failed to agree on the disposition of the petition for review, the initial decisions became the final decisions of the Board pursuant to 5 C.F.R. § 1200.3(b) (2000). The petition for review to this court followed.

## DISCUSSION

■ Decisions of the Board must be sustained unless they are arbitrary, capricious, not in accordance with law, obtained without procedures required by rule, law, or regulation, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994); *Hayes v. Dep't of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984). On appeal, petitioner bears the burden of establishing error in the Board's decision. *Link v. Dep't of Treasury,* 51 F.3d 1577, 1581 (Fed.Cir. 1995).

■ The Board's review of an employee's removal pursuant to a last-chance settlement agreement is limited. "It is settled that an employee can waive the right to appeal in a last-chance agreement." *Gibson v. Dep't of Veterans Affairs,* 160 F.3d 722, 725 (Fed.Cir.1998); *see Link,* 51 F.3d at 1581. To overcome such a waiver, an employee must prove either compliance with the last-chance agreement, that the agency breached the agreement, or that the employee did not knowingly and voluntarily enter into the agreement. *Link,* 51 F.3d at 1582.

■ Because there is no allegation that petitioner did not knowingly and voluntarily enter the last-chance agreement or that the agency breached the agreement, the issue for us is whether the Board erred in finding that petitioner violated the agreement without holding a hearing. The administrative judge performed a careful analysis of the last-chance agreement and the other evidence. We find no error in the administrative judge's analysis or conclusion.

Petitioner urges that the administrative judge erred in finding the last-chance agreement unambiguous. We do not find this argument to be persuasive. The language of the last-chance agreement broadly stated that petitioner's failure to be on duty during scheduled duty hours without permission would constitute AWOL. We do not find any ambiguity in the terms "on duty," "without permission," or "AWOL." These are well-defined terms. Nor does petitioner contest the validity of the Board case law cited by the administrative judge for the proposition that an employee need not be absent from the work site to be found AWOL. *See Meads v. Veterans Admin.,* 36 M.S.P.R. 574 (1988); *Mitchell v. Dep't of Defense,* 22 M.S.P.R. 271 (1984).

Petitioner asserts that the last-chance agreement did "not regulate how [she] conducts herself while at headquarters building during her scheduled duty hours," and that the last-chance agreement did not require her to obtain permission prior to leaving her work station, even if she left for extended periods of time and was not engaged in performing her assigned tasks during this time period. Under petitioner's narrow interpretation of the agreement, petitioner would only be required to walk in and out of the main entrance of the agency at the right time each day. The agreement cannot be read in this manner. On its face, the agreement required her to be engaged in performing her assigned tasks during regular work hours, and to obtain supervisor permission prior to any "failure to be on duty during scheduled duty hours." Paragraph 6a specifically provided that: "Any non-emergency absence that is not pre-scheduled or pre-approved will result in AWOL. No AWOL will be allowed during the term of this agreement." Similarly, paragraph 6e provided that: "Any failure to be on duty during scheduled duty hours, except as authorized by appellant's supervisor or as specified under subparagraphs 6a and 6b, will result in the appellant being AWOL." Contrary to petitioner's assertions, we find the terms of the agreement both broad and unambiguous.

The requirement that petitioner be "on duty" in ordinary parlance imposed a requirement that petitioner be engaged in performing her assigned tasks during the workday. *See Webster's Third New International Dictionary* 705 (1968) (defining "on duty" as "assigned to a task or duty: engaged in or responsible for some specific performance"). The term "on duty" is to be contrasted with the term "off duty" which means "not assigned to any specific task or duty: free from assignment or responsibility <men *off duty* loafing around barracks>." *Id.* In two affidavits by union representatives, submitted in connection with petitioner's motion for reconsideration, the affiants stated that "[t]he collective bargaining agreement [between the agency and AFGE] defines 'duty' only in terms of duty stations" and that petitioner's duty station was "BPA headquarters." They thus construed the agreement as simply obligating petitioner to be at the headquarters building. Whether or not these affidavits were considered to be part of the record, they merely claim that another agreement (the collective bargaining agreement) used "duty" in a different sense. They raise no issue as to whether the term "on duty" had an established meaning different from the ordinary meaning and thus do not suggest an ambiguity in the last-chance agreement. *See Jowett, Inc. v. United States,* 234 F.3d 1365, 1369 (Fed.Cir.2000) (holding that evidence of custom or trade usage may not be used to vary the meaning of an unambiguous term in a contract unless the evidence shows an accepted industry meaning different than the ordinary meaning). The affiants' construction of the last-chance agreement is also irrelevant. *Id.* at 1369–70 (stating that "affidavits that those familiar with trade practices ... would interpret the [agreement] differently are irrelevant, unless they identify a specific term that has a well-understood meaning in the

industry and that was used in, or omitted from, the contract").

■ Next, we must determine whether the Board erred in finding that a hearing was not required before determining whether petitioner violated the terms of the last-chance agreement. We hold that the Board did not err. It is undisputed that petitioner was away from her work station and not engaged in performing her assigned tasks for a significant portion of the day on August 9, 1999. Here, although the administrative judge focused on her absence in the afternoon to meet with Ms. Juarez, petitioner, by her own admission, was not working at her assigned tasks for a significant portion of the day without permission from her supervisor. Because the last-chance agreement expressly required petitioner to obtain permission from her supervisor prior to any absence from work, such conduct was a violation of the agreement. Petitioner does not claim that her absences from work were trivial or for an insignificant period, or that she was otherwise engaged in performing her assigned tasks during her absence.

Petitioner contends that, as a matter of practice, although the rules required supervisor permission, employees did not typically obtain permission before meeting with a union steward, and were not typically disciplined for failing to do so, relying on the two affidavits from union representatives submitted after the administrative judge's decisions. Again, whether or not these affidavits are properly considered to be part of the record, they are irrelevant. While ordinary employees might have enjoyed such latitude to depart from governing rules without disciplinary action, petitioner did not by the explicit terms of the last-chance agreement. While petitioner contends that the last-chance agreement required her to be treated like any other

agency employee, this is only true for situations not governed by the agreement. Paragraph 16 of the last-chance agreement specifically limited the treatment of petitioner as an ordinary employee when it stated: "Except for the specific requirements of the agreement, appellant will be treated like any other BPA employee."[1] In any event, petitioner's failure to comply with the last-chance agreement was not limited to the period of her meeting with the union steward but encompassed several hours of the workday.

The last-chance agreement was a product of several years of petitioner's repeated failure to be available to work full-time at her position, and repeated failures on her part to notify the agency and obtain permission for such absences. Despite enormous patience and accommodation by the agency throughout her tenure as an employee, and repeated warnings that any further failure to be "on duty" would lead to her termination, petitioner does not dispute that she was absent from her work station and not performing her assigned tasks for much of the day on August 9, 1999, without notifying or obtaining permission from her supervisor as specifically required by the agreement. We hold that such conduct was a violation of the terms of the last-chance agreement and that a hearing was not required.

Petitioner complains that she was not allowed discovery on the issue of the Board's jurisdiction and that this was a denial of her due process rights. In fact her counsel specifically stated in a December 21, 1999, affidavit that he delayed requesting discovery until a decision on the jurisdiction issue. In any event, petitioner has not shown that denial of discovery would have been prejudicial even if sought on the jurisdictional issue.

## CONCLUSION

Therefore, we affirm the Board's dismissal of petitioner's appeal and its refusal to grant a hearing.

*AFFIRMED.*

## COSTS

No costs.

PLAGER, Senior Circuit Judge, concurring.

I concur in the result, though I find the case closer, and more troubling, than my colleagues. That the employee here was a problem employee is without doubt. Whether the last chance agreement (LCA) was unwise, in the sense that perhaps the agency should have stuck to its firing guns in the first instance, is an open question. Once having entered into the LCA, however, the agency, as well as the employee, was bound by its terms. Under the terms of the agreement the employee was charged with violating the LCA by failing "to be on duty during scheduled duty hours." Exactly where she was during some parts of the day in question is not entirely clear, though she is not charged with being away from the building where she worked.

What does the LCA mean by failing to be "on duty" while at the office? That is, for me, not so obvious. Is taking a coffee break such a failure? Going to the bathroom? Even gossiping at the water cooler? I doubt that the agency would dismiss

---

**1.** The concurring opinion suggests that under our construction of the agreement, there might be questions as to the ability of petitioner to take a coffee break, go to the bathroom, or use the water cooler. This case, of course, presents no such issues. To the extent that such breaks were permitted by the applicable written work rules or were taken with supervisor permission, they were permissible and consistent with being "on duty."

an employee for any of those acts alone, even if it meant the employee was in fact away from her desk and her papers, and even if the departure was without specific permission from some supervisor, presumably located elsewhere in the building. Of course, the employee here was not just any employee, but was under the LCA. That may have limited her range of action, even severely, but only if the LCA so specified.

Whether resolving government labor-management disputes through these LCA's is good public policy is debatable. One need not decide that issue to recognize that often they are sources of further conflict between the dissatisfied employing agency and the equally dissatisfied employee. Be that as it may, once there is such an agreement, the parties should have to live with it. When the agreement contains a provision as broad and as ambiguous as this "on duty" one, I would have thought a better process would have been for the Board to give the employee at least a hearing in the matter, rather than this back-of-the-hand dismissal without a hearing.

If you accept the AJ's fact finding, sustained by a divided Board, comb the record for support, and construe the agreement in the Government's favor, the result is sustainable under our standard of review.