NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3352

CHARLES E. POSEY,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

DECIDED: April 28, 2006

Before SCHALL, BRYSON, and DYK, <u>Circuit Judges</u>.

PER CURIAM.

DECISION

Charles E. Posey petitions for review of the final decision of the Merit Systems Protection Board ("Board") that denied his request for corrective action in an individual right of action ("IRA") appeal. <u>Posey v. Dep't of Defense</u>, No. AT1221030888-W-1, (M.S.P.B. July 7, 2005) ("<u>Final Decision</u>"). We <u>affirm-in-part</u>, <u>reverse-in-part</u>, and <u>remand</u>.

DISCUSSION

I.

Mr. Posey was employed by the Department of Defense's Defense Commissary Agency ("DeCA") as Grocery Department Manager at the Fort McClellan Commissary. On September 10, 1998, he was placed on a 30-day performance improvement plan ("PIP"). On November 8, 1998, Mr. Posey sent a letter to Congressman Robert Aderholt identifying occasions of mismanagement at the Fort McClellan Commissary. Subsequently, in a February 9, 1999 letter to Congressman Aderholt, DeCA's Inspector General stated that the issues set forth in Mr. Posey's letter "are being reviewed." Shortly thereafter, in a letter received on February 24, 1999, but dated February 22, Mr. Posey was notified that he "marginally met" the fully successful level and was being "formally notified" that he had satisfactorily completed the 30-day PIP. On February 26, 1999, however, Mr. Posey received another letter, dated February 24, placing him on a 60-day PIP for less than satisfactory performance subsequent to October 9, 1998, the day that the first PIP period ended.

On March 5, 1999, the Inspector General sent a detailed response to Congressman Aderholt. The Inspector General noted that both the deputy commissary officer and the commissary officer "indicate that they have had to intervene and perform some of the management tasks expected of Mr. Posey in order to ensure mission accomplishment." In August of 1999, Mr. Posey received a negative performance appraisal and on September 22, 1999, he received a proposed removal for unsuccessful performance under the February 26, 1999 PIP. Before Mr. Posey was removed and while represented by counsel, he entered into a last chance agreement

("LCA"), dated January 11, 2000. In the LCA, Mr. Posey waived his appeal rights before the Board and the Equal Employment Opportunity Commission with respect to "any action resulting from violation of [the LCA]" and any matters that led to the LCA. The LCA provided in relevant part:

> Mr. Posey agrees to waive appeal rights to the Merit Systems Protection Board or complaint rights to the Equal Employment Opportunity Commission concerning this action or any court filing regarding any action resulting from violation of this Last Chance Agreement, including reinstatement of the separation action. Mr. Posey agrees to waive due process rights for any action initiated for violation of this Last Chance Agreement during the period.
>
> . . .
>
> It is understood by the undersigned that this agreement is in full and complete settlement of all outstanding administrative or EEO complaints or appeals, in this or any other forum, filed by the below named employee or on his behalf regarding any matters related to the operative facts of this settlement agreement. Mr. Posey agrees to voluntarily withdraw any outstanding administrative complaint or appeal, and to request any grievance be withdrawn. It is understood that settlement is contingent upon those complaints, appeals, or grievances being withdrawn. Further, it is understood that in withdrawing all appeals or complains, Mr. Posey waives his rights to any hearing or further appeal or other action on matters raised. It is further stipulated that the withdrawals are made without any threat of coercion, intimidation, promise, or inducement other than the terms set forth in this agreement.

On April 12, 2000, DeCA removed Mr. Posey from his position for failure to maintain a fully satisfactory performance level, as required by the LCA.

II.

Mr. Posey did not seek to appeal his removal directly to the Board. Rather, in due course, he sought to challenge his removal by initiating an IRA proceeding before the Office of Special Counsel ("OSC"). Mr. Posey alleged that DeCA had retaliated

against him for his whistleblowing activities by taking the following personnel actions against him: (1) his placement on the September 1998 PIP; (2) his placement on the February 1999 PIP; (3) the August 1999 negative performance appraisal; (4) the removal action that never occurred because he accepted the LCA; and (5) his termination based upon violation of the LCA. In a June 30, 2003 letter, OSC notified Mr. Posey that it was closing its investigation in the matter.

Following OSC's action, Mr. Posey filed an IRA with the Board. In an initial decision, the administrative judge ("AJ") to whom the appeal was assigned denied Mr. Posey's request for corrective action. Posey v. Dep't of Defense, No. AT1221030888-W-1, slip op. (M.S.P.B. Dec. 23, 2003) ("Initial Decision"). The AJ ruled that because Mr. Posey's whistleblowing disclosure to Congressman Aderholt postdated DeCA's decision to place him on a PIP in September of 1998, it could not have been a contributing factor in that personnel action. Initial Decision, slip op. at 3. The AJ did find, however, that Mr. Posey's whistleblowing disclosure to Congressman Aderholt "was a contributing factor in his placement on the February 24, 1999 PIP, as well as in his August 1999 performance appraisal which led to his removal." Initial Decision, slip op. at 4-5. Nevertheless, the AJ found that DeCA had shown "by clear and convincing evidence that [it] would have placed [Mr. Posey] on a PIP on February 24, 1999, and given him a less than satisfactory performance rating in August 1999" in the absence of the whistleblowing. Id., slip op. at 5. Finally, the AJ ruled that the Board lacked "jurisdiction over the proposed removal that was never effected because of the LCA or the removal action that was based upon the appellant's performance following the LCA.

For, under the provisions of the LCA, the appellant waived all appeal rights to the Board including his right to file an IRA." Id., slip op. at 3.

The Initial Decision became the final decision of the Board when the Board denied Mr. Posey's petition for review for failure to meet the criteria for review set forth at 5 C.F.R. § 1201.115(d). Final Decision. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

III.

Mr. Posey's first contention on appeal is that his superiors retaliated against him for his whistleblowing by placing him on the PIP and by giving him an unsatisfactory performance appraisal, both of which, in turn, resulted in the LCA. It is the government's position that the LCA was a settlement agreement, as a result of which Mr. Posey waived his right to challenge the 1999 PIP and 1999 negative performance appraisal.

We agree with the government. "The Board's review of an employee's removal pursuant to a last-chance settlement agreement is limited." Buchanan v. Dep't of Energy, 247 F.3d 1333, 1338 (Fed. Cir. 2001). We have stated that "[i]t is settled that an employee can waive the right to appeal in a last-chance agreement."

By entering into the LCA, Mr. Posey waived his right to argue that his placement on the PIP in February of 1999, the unsatisfactory performance appraisal that he received in August of 1999, or the LCA itself were tainted by retaliation for whistleblowing. We turn now to the second contention that Mr. Posey raises on appeal.

05-3352                                    5

IV.

In his appeal to the Board, Mr. Posey also argued that his removal while he was under the LCA was in retaliation for whistleblowing. Thus, he stated:

> I was offered a ninety (90) day last chance agreement. . . . My desire . . . at the time was to prove my abilities as well as reach retirement when the base closed in September 2000. However, from the onset of my return to duty January 12, 2000, Mr. Ray and Mr. Wolfe made it impossible for me to perform my duties under the stress and impossible odds they put me through due to retaliation for my whistleblowing.

As seen above, the AJ ruled that the LCA deprived the Board of jurisdiction to consider this claim.

In his opening brief before us, Mr. Posey states that the AJ "failed to allow Posey to present evidence that the LCA was flawed and bias [sic]." He also states that the AJ erred "in failing to allow the plaintiff (Posey) to present evidence of bias on the part of his supervisor." In his reply brief, Mr. Posey states: "It is clear by the record that the supervisor Mr. Ray had a bias toward the Petitioner prior to the LCA and it is reasonable to consider that the same supervisor would maintain that bias during the LCA period. Therefore, it would also be reasonable to consider that the LCA would be flawed due to the bias of the supervisor." In view of (i) Mr. Posey's claims before the Board; (ii) the AJ's ruling that Mr. Posey had been the victim of retaliation in the past; and (iii) the AJ's ruling that he lacked jurisdiction to consider Mr. Posey's contention that he suffered retaliation while he was under the LCA, we understand Mr. Posy to be arguing that the AJ erred by failing to consider his claim that his removal during the period of the LCA was in retaliation for his previous whistleblowing.

Mr. Posey could overcome the waiver of appeal rights in the LCA if he established before the Board that DeCA breached the agreement. Link v. Dep't of Treasury, 51 F.3d 1577, 1582 (Fed. Cir. 1995). Because it is an implied term of every agreement that each party will act in good faith towards the other, a party may breach an agreement by acting in bad faith. Id. Obviously, if Mr. Posey's supervisors retaliated against him while he was subject to the LCA, they acted in bad faith, and DeCA thereby breached the agreement. For these reasons, the AJ erred in ruling that he lacked jurisdiction to consider this part of Mr. Posey's appeal.

V.

The Board did not err in ruling that, by entering into the LCA, Mr. Posey waived his right to challenge (i) his placement on the PIP in February of 1999 and (ii) the unsatisfactory performance appraisal he received in August of 1999. Neither did the Board err in ruling that, by entering into the LCA, Mr. Posey waived his right to argue that the agreement itself was the product of retaliation for whistleblowing. In those respects, the decision of the Board is affirmed. The Board did err, however, in ruling that, by entering into the LCA, Mr. Posey waived the right to argue that his supervisors retaliated against him while he was subject to the agreement. In that respect, the decision of the Board is reversed. The case is remanded to the Board for consideration of this latter claim. On remand, the first order of business will be for the AJ to determine—after hearing from the parties—whether Mr. Posey is entitled to an evidentiary hearing on his claim of retaliation during the period of the LCA. See Buchanan, 247 F. 3d at 1333.

In sum, we affirm-in-part, reverse-in-part, and remand for further proceedings consistent with this opinion.