NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROBERT SEAN ROSS,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**DEPARTMENT OF THE TREASURY,**
*Intervenor*

---

2021-2262

---

Petition for review of the Merit Systems Protection Board in No. NY-0752-21-0008-I-1.

---

Decided:  February 10, 2022

---

ROBERT SEAN ROSS, Ronkonkoma, NY, pro se.

KATRINA LEDERER, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent.  Also represented by TRISTAN L. LEAVITT, KATHERINE MICHELLE SMITH.

KELLY GEDDES, Commercial Litigation Branch, Civil

Division, United States Department of Justice, Washington, DC, for intervenor. Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, PATRICIA M. MCCARTHY.

————————————

Before LOURIE, BRYSON, and CUNNINGHAM, *Circuit Judges*.

PER CURIAM.

Petitioner Robert Sean Ross seeks review of an order of the Merit Systems Protection Board ("MSPB" or "Board") dismissing his Individual Right of Action ("IRA") appeal for lack of jurisdiction. We affirm.

I

Mr. Ross was employed by the Internal Revenue Service ("IRS") as an Internal Revenue Agent. On October 18, 2019, the IRS proposed removing Mr. Ross from his position based on conduct not at issue in this appeal. Supp. App'x 39–40. In settlement of that action, Mr. Ross, with the assistance of his union representative, entered into a Last Chance Agreement ("LCA") with the IRS. The agreement was executed on March 4, 2020. *Id.* at 2.

Under the terms of the LCA, Mr. Ross would be suspended for 30 days, after which Mr. Ross was not to exhibit a lack of candor or fail to observe written regulations, orders, rules, or IRS procedures for two years. *Id.* at 85. As part of the LCA, Mr. Ross agreed that the IRS could terminate him if he breached the LCA. *Id.* at 86. The LCA further included a waiver of Mr. Ross's appeal rights in the event of termination, with the exception that Mr. Ross could appeal to the MSPB "for the sole purpose of challenging the Agency's factual determination that he breached" the LCA. *Id.* Finally, the LCA provided that Mr. Ross "freely and willingly" entered into the LCA "without coercion or duress." *Id.* at 87.

On June 19, 2020, Mr. Ross sent an email containing the last names of multiple taxpayers to five IRS staff members and to George Greenberg, his union representative. Supp. App'x at 74, 76. Mr. Ross sent the email to Mr. Greenberg's unencrypted Gmail account because, according to Mr. Ross, Mr. Greenberg could not access his IRS email account due to the COVID-19 pandemic. Pet'r's Br. 4.

On September 11, 2020, Mr. Ross attempted to send an email to an accountant working on one of his cases. *Id.* at 31. That email included a taxpayer's name and Social Security number. *Id.* The IRS's IT security system intercepted the message because it contained personally identifiable information and was sent to a non-IRS email address. *Id.* at 64.

On October 9, 2020, the IRS informed Mr. Ross that he was being terminated because those two email messages evidenced a breach of the LCA. *Id.* at 58–59. Specifically, the IRS noted that Mr. Ross had violated Internal Revenue Manual ("IRM") 3.42.9.2.2, which states that "[e]mployees may not use e-mail to transmit SBU [sensitive but unclassified] data unless they use IRS secure messaging system." Office of Disclosure, IRM 3.42.9.2.2(6) (Jan. 1, 2019). Under IRS rules, "personal data of taxpayers" or "Personally Identifiable Information (PII)" is a type of sensitive information that is covered by the IRM. Secure Messaging & Encryption, IRM 1.10.3.2.1(2) (Nov. 17, 2016). The IRM adds that "taxpayer, SBU, or PII information" should not be included "in email messages or attachments" unless IRS-approved encryption technology is used. *Id.* at 1.10.3.2.1(3). Because the two emails sent by Mr. Ross included taxpayer names, and in one case, a Social Security number, the IRS determined that Mr. Ross had not complied with IRS procedures and therefore breached the LCA. Supp. App'x 58–59.

After receiving notice of his termination, Mr. Ross timely appealed his termination to the MSPB. *Id.* at 46. The administrative judge subsequently issued an order directing the parties to submit statements addressing the Board's jurisdiction. *Id.* at 36. Because the LCA included a waiver of appeal rights, the administrative judge required Mr. Ross to nonfrivolously allege at least one of the following: (1) that he complied with the LCA; (2) that the agency materially breached the LCA or acted in bad faith; (3) that he did not voluntarily enter into the LCA; or (4) that the LCA was the product of fraud or mutual mistake. *Id.* (citing *Bruhn v. Dep't of Agric.*, 124 M.S.P.R. 1, 6 (2016)).

First, Mr. Ross argued that he complied with the LCA. As to the June 19 email, Mr. Ross asserted that taxpayers' last names alone are not PII, and therefore the email did not violate agency policy. Supp. App'x. 31. Mr. Ross also contended that the failure of the IRS's IT security system to block the email was evidence that the email did not contain PII. *Id.* As to the September 11 email, Mr. Ross argued that he did not actually violate IRS policy because the email was intercepted by the IT security system, and therefore was never transmitted outside of the agency. *Id.* The administrative judge was not persuaded by these arguments and found that the emails "were in violation of the rules relating to the transmission of email outside the IRS." *Id.* at 5.

Second, Mr. Ross argued that he did not voluntarily enter into the LCA because "the union told him that he did not have a choice but to sign it." *Id.* The administrative judge found that argument to be unpersuasive in view of the fact that the LCA explicitly stated that Mr. Ross entered the agreement "freely and willingly . . . without coercion or duress on the part of anyone." *Id.* (quoting Supp. App'x 87).

Third, Mr. Ross argued that the LCA resulted from fraud because his union representative told him that "entering into the LCA would result in his being reassigned to a different manager upon his return to work." Supp. App'x 5. The administrative judge found this argument unpersuasive because the LCA did not state that Mr. Ross would be reassigned to a different manager, and thus the agency did not breach the agreement with Mr. Ross or fraudulently mislead him. *Id.*

Finding that Mr. Ross had not raised any non-frivolous grounds for challenging the LCA or the IRS's decision to remove him for violation of the LCA, the administrative judge concluded that the Board lacked jurisdiction over Mr. Ross's appeal. Mr. Ross then appealed to this court.

## II

Under 5 U.S.C. § 7703(c), we must affirm the decision of the MSPB unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. *See also Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984).

To overcome a waiver of appeal rights in a last chance agreement, an employee must show that (1) he complied with the agreement; (2) the agency materially breached the agreement; or (3) he did not enter into the agreement knowingly and voluntarily. *Buchanan v. Dep't of Energy*, 247 F.3d 1333, 1338 (Fed. Cir. 2001); *Copeland v. Dep't of Army*, 847 F. App'x 919, 920 (Fed. Cir. 2021).

## A

First, Mr. Ross raises several arguments that appear to be directed to whether he complied with the LCA. For example, he argues that "a last name does not give the taxpayer's identity out," apparently suggesting that a last name does not constitute PII. Pet'r's Reply 1. Additionally,

he claims that he acted in reliance on a statement from a union official that he should "send an email." *Id.* at 2. Finally, he alleges that the circumstances surrounding the COVID-19 pandemic left him with no choice but to contact Mr. Greenberg at his Gmail account. Pet'r's Br. 4.

Mr. Ross's arguments fail to account for other evidence that he breached the LCA. Even if a taxpayer's last name does not constitute PII (an assertion that the IRS disputes), he does not address on appeal the fact that the September 11 email contained a taxpayer's Social Security number. Mr. Ross also argued to the administrative judge that because the IRS's IT security system intercepted the message, he did not violate any IRS procedures regarding the use of PII in emails. Supp. App'x 31. The agency, however, reasonably concluded that Mr. Ross had violated its policy against using email to transmit sensitive information. The IRM prohibits "includ[ing] taxpayer, SBU, or PII information in email messages" without using IRS-approved encryption technology. Secure Messaging & Encryption, IRM 1.10.3.2.1(2) (Nov. 17, 2016). The IRM does not distinguish between messages that actually reach the intended recipient and those that do not. *See id.* Accordingly, the administrative judge was not required to credit Mr. Ross's argument that the interception of his email by the IRS's IT security system meant that there was no violation of the IRM.

Mr. Ross's assertion that he had no choice but to send the June 19 email to Mr. Greenberg's Gmail account is similarly unavailing. Even assuming that Mr. Ross had no other way to contact Mr. Greenberg, he has not explained why it was necessary to include taxpayer names in the email that he sent.

Mr. Ross further argues that other IRS employees included the same taxpayer information in other emails in violation of the IRM. Pet'r's Reply 1–2. Even if true, an assertion that another employee violated IRS policy is not

evidence that Mr. Ross did not himself violate the policy. Mr. Ross adds that he had not completed the "updated training" regarding IRS internal policy. Pet'r's Br. 4. But Mr. Ross's assertion that he was not aware of the agency's policy does not preclude a finding that he violated that policy.

In view of the record evidence, the administrative judge was fully justified in concluding that Mr. Ross failed to make a non-frivolous showing that he did not breach the LCA.

B

Second, Mr. Ross argues that he did not voluntarily enter into the LCA. Specifically, he argues that his union representative "forced [him] into signing" the LCA. Pet'r's Br. 4. He adds that he "was told that [he] was being removed from the Service unless [he] signed the agreement." Pet'r's Reply 1. Aside from his own assertions, Mr. Ross points to no evidence in the record supporting those claims. The administrative judge explicitly considered Mr. Ross's assertions and concluded that they did not outweigh the representation in the LCA that Mr. Ross "freely and willingly" entered into the LCA "without coercion or duress on the part of anyone." Supp. App'x 5 (quoting Supp. App'x 87). We therefore uphold the administrative judge's finding that Mr. Ross failed to make a non-frivolous showing that he was forced to enter into the LCA. *See Jones v. Dep't of Interior*, 321 F. App'x 925, 927 (Fed. Cir. 2008).

C

Third, Mr. Ross appears to argue that the agency engaged in fraud or acted in bad faith, which are factors that the Board considered in its analysis. *See* Supp. App'x 2. Mr. Ross contends that his manager "constantly harassed" him and "never [gave him] a chance to improve to her standards," despite his satisfactory performance under previous managers. Pet'r's Br. 4. In Mr. Ross's view, this

was evidence that the IRS "had intent to remove [him]." *Id.* The administrative judge was not required to treat that evidence as indicative of bad faith, especially given the administrative judge's finding that Mr. Ross engaged in conduct that violated the LCA.

Relatedly, Mr. Ross argued before the Board that his union representative told him he would be transferred to a different manager after returning to work. Supp. App'x 4. The administrative judge considered that argument and rejected it because "the [LCA] did not state that [Mr. Ross] would be reassigned to another manager." *Id.* at 5.

We therefore conclude that Mr. Ross has not made a non-frivolous showing that the IRS acted in bad faith or that the LCA was the product of fraud on the part of the agency.

### III

We have considered Mr. Ross's remaining arguments and find them unpersuasive. Accordingly, the Board's dismissal of Mr. Ross's appeal for lack of jurisdiction is affirmed.

### **AFFIRMED**

COSTS

No costs.